1

2

3

4                    UNITED STATES DISTRICT COURT

5                 NORTHERN DISTRICT OF CALIFORNIA

6                          EUREKA DIVISION

7

8    METABYTE, INC,                        Case No.  23-cv-04862-VC (RMI)

9              Plaintiff,

10        v.                               **ORDER RE: DISCOVERY DISPUTE
                                           LETTER BRIEFS**
11   META PLATFORMS, INC.,                 Re: Dkt. Nos. 49, 50

12              Defendant.

13

14        Now pending before the court are two discovery dispute letter briefs. The first of which

15   involves Plaintiff Metabyte, Inc.'s ("Metabyte") request to compel the apex deposition of Mr.

16   Mark Zuckerberg, the CEO of Defendant Meta Platforms, Inc. ("Meta"). *See* Ltr. Br. I (dkt. 49) at

17   2-4. The second dispute concerns Meta's request for the entry of its proposed ESI protocol. *See*

18   Ltr. Br. II (dkt. 50) at 2-4. Each Party objects to the relief sought by the other. Having reviewed

19   and considered the Parties' arguments – pursuant to Federal Rule of Civil Procedure 78(b) and

20   Civil Local Rule 7-1(b), the court finds these matters suitable for disposition without oral

21   argument. For the reasons stated below, Metabyte's request to compel the apex deposition of Mr.

22   Zuckerberg is denied, and Meta's request for the entry of its proposed ESI protocol is granted.

23        Regarding the first dispute, the court will note that "[i]n determining whether to allow an

24   apex deposition, courts consider (1) whether the deponent has unique first-hand, non-repetitive

25   knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has

26   exhausted other less intrusive discovery methods." *Apple Inc. v. Samsung Elecs. Co.*, 282 F.R.D.

27   259, 263 (N.D. Cal. 2012) (quoting *In re Google Litig.*, 08-cv-03172 RMW (PSG), 2011 U.S.

28   Dist. LEXIS 120905, at *10 (N.D. Cal. Oct. 19, 2011)). The court finds that Metabyte's showing

United States District Court
Northern District of California

1    in this regard is unpersuasive. As to the first prong, Metabyte states that Mr. Zuckerberg's

2    personal role "in architecting and directing Facebook's rebrand to Meta warrants his deposition."

3    *See* Ltr. Br. I (dkt. 49) at 3. Building on this conclusory statement, Metabyte then suggests that its

4    willful infringement claim "requires an investigation of Mr. Zuckerberg's state of mind throughout

5    the rebranding process . . . [in that] [h]is decision to adopt the 'Meta' mark despite knowing of

6    meta-formative marks – including Metabyte's – is central to assessing willfulness [which] cannot

7    be fully evaluated without deposing Mr. Zuckerberg, who personally orchestrated the rebrand." *Id*.

8    The court finds these assertions to be unsubstantiated and speculative, such that they are

9    unpersuasive regarding the question of whether Mr. Zuckerberg, in fact, has unique first-hand,

10    non-repetitive knowledge of the facts at issue in the case. As to the second prong, the court finds

11    that Metabyte has failed to even explore, let alone exhaust, less intrusive discovery methods to

12    garner the information it seeks. According to Meta, "[a]s of this filing, Metabyte has taken **no**

13    depositions and [has] only recently served interrogatories. Instead, Metabyte proposes that it **start**

14    with Meta's CEO instead of deposing any other witnesses." *Id*. at 6 (emphasis in original).

15    Metabyte's only answer in this regard is to simply declare that "[n]o alternative sources can

16    provide the same insights into [Mr. Zuckerberg's] direct involvement in the trademark acquisition

17    and rebranding process." *Id*. at 4. However, this is no answer – at least not one that would satisfy

18    Metabyte's burden to show that it has exhausted less intrusive discovery methods. Metabyte has

19    not explained why interrogatories or requests for admission could not be used to conducts what it

20    characterizes as its "investigation of Mr. Zuckerberg's state of mind throughout the rebranding

21    process," instead, in conclusory fashion and without any explanation, Metabyte only states (rather

22    than explains) that only a deposition would suffice. However, as set forth above, the law requires

23    more. Thus, for that reason, as well as the reasons set forth by Meta (*see id*. at 4-6), Metabyte's

24    request for an order compelling the deposition of Mr. Zuckerberg must be **DENIED**.

25        Regarding the second dispute, Meta seeks the entry of an ESI protocol that would be

26    effective in addressing the issue of "Metabyte's CEO continue[ing] to hand-pick documents for

27    production as PDFs without original metadata," a problem which Meta claims has caused

28    "recurring search deficiencies that have been prevalent in Metabyte's discovery." *See* Ltr. Br. II

United States District Court
Northern District of California

2

United States District Court
Northern District of California

1    (dkt. 50) at 2 n.1. Meta adds that "Metabyte's counsel ***admitted*** that Metabyte CEO Manu Mehta –

2    unsupervised by counsel – was responsible for its document collection," and that "Metabyte's

3    paltry production only underscores Meta's concerns . . . [in that] [it] has produced [only] a total of

4    approximately 400 unique documents and fewer than *ten email communications* in response to

5    Meta's various requests for production." *Id*. at 3 (emphases in original). Meta then notes that it has

6    recently learned that the majority of the 400 documents that have been produced were not

7    generated through any ESI search. *Id*. Meta substantiates this assertion by noting that "on

8    February 18, Metabyte re-produced 35 documents and explained in its position statement [] that no

9    other documents [it] produced contain original metadata because they were hard copy documents

10   or documents created for this litigation." *Id*. In short, the essence of Meta's request can be distilled

11   to the statement that "Metabyte should be required to produce all documents in a forensic manner

12   with an associated load file of original metadata." *Id*. Meta then sets forth detailed justifications as

13   to why the associated metadata is necessary in order for those documents to be useful. *See id*. at 3-

14   4.

15          For its part, Metabyte contends that the time for entry of an ESI protocol "has long passed"

16   because "[d]ocument production is nearly complete . . . [and] [a]ny remaining productions will be

17   minimal and require careful manual handling." *Id*. at 4. Metabyte then submits that it "is fed up

18   with Defendant's endless wheel spinning, shifting arguments, and its return with yet another

19   iteration of this letter," which Metabyte suggests amounts to "conduct [that] reeks of bad faith."

20   *Id*. Metabyte adds that Meta "refuses to accept that not all documents or document infrastructure

21   are suitable for traditional ESI searching, and that an ESI protocol is overkill for Plaintiff's small

22   business and limited document volume . . . [because] [Metabyte's] search methodology has been

23   effective – [given that] under attorney supervision, relevant documents were identified by using

24   built-in tools in the systems for Boolean, keyword, text and date-range searches or custodian

25   knowledge." *Id*. at 5. Metabyte also notes that some documents have been produced in their native

26   formats and that Meta's "demand for load files is disproportionate and unnecessary, especially

27   with production nearly complete [because] [l]oad files serve no purpose here, as they are designed

28   for large-scale productions with complex metadata, not Plaintiff's limited documents and simple

                                                    3

United States District Court
Northern District of California

1    systems." *Id*. Metabyte then adds that Meta's demand for forensic collection of Slack messages "is

2    disproportionate[,] grossly burdensome, and highly intrusive[,] effectively seeking Plaintiff's

3    entire Slack system on certain dates when only a handful of messages are relevant," and that

4    "Defendant can verify these messages and attachments during depositions." *Id*.

5         The court must note that these matters have been in dispute for some time, and the court

6    finds that Metabyte's resistance to Meta's discovery demands in these regards appears to amount

7    to attempted stonewalling such as to stall and run out the clock for document production. For

8    example, in November of 2024, Meta complained that it "learned on [a November 11th phone]

9    call that Metabyte supposedly *could have* obtained Slack messages (which Meta has been

10   requesting since June [of 2024]) at any time by upgrading its Slack subscription, but did not do so

11   until October 29 and *still* has not collected or produced any Slack messages." *See* Ltr. Br. of Nov.

12   15, 2024 (dkt. 37) at 2. In that same letter, Meta was complaining about Metabyte's CEO "having

13   full discretion over what the company searches for and produces" and noting that in order to

14   "address some of these deficiencies and avoid the need for judicial intervention, the Parties have

15   begun negotiating an ESI protocol that sets out requirements as to custodians and search terms

16   [and] [i]f the parties are unable to agree on the protocol – or if disputes arise under an agreed-upon

17   protocol – Meta requests the right to file a further letter setting forth those disputes." *Id*. The

18   previous month, in its position statement in an earlier discovery dispute letter brief, Metabyte's

19   counsel appeared to tacitly concede that Metabyte's CEO and other employees had taken on the

20   responsibility for document production unsupervised by counsel, notwithstanding the contrary

21   representation in the letter brief now pending before the court. *See* See Ltr. Br. of Oct. 30, 2024

22   (dkt. 33) at 5 ("Upon hearing the concerns of Defendant's attorneys during meet and confer calls,

23   Metabyte's counsel went back and interviewed multiple employees of Metabyte, not just the CEO,

24   and verified that production had been thorough and complete.").

25        On this basis, and also for the reasons advanced by Meta (*see* Ltr. Br. II (dkt. 50) at 2-4),

26   the request for the entry of Meta's proposed ESI Order (*see id*. at Exh A (dkt. 50-1) at 2-18) is

27   **GRANTED**, and Metabyte's objections thereto are **OVERRULED**. Because Meta's attached

28   proposed order is styled as a "proposed *stipulated* ESI order" (*see id*. at 2) (which, given

4

1   Metabyte's strenuous objections appears to be anything but "stipulated"), and because it contains

2   signature lines for counsel for both Parties (*see id*. at 10), Meta is **ORDERED** to promptly file a

3   copy of its proposed ESI Order without references to the word "stipulated" (*see id*. at 2, 10), and

4   without signature lines for counsel (*id*. at 10), such that the court can sign and enter the document

5   as an order of the court.

6       **IT IS SO ORDERED.**

7   Dated: March 13, 2025

8

9   _____
    ROBERT M. ILLMAN
10   United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

5