COOLEY LLP
BOBBY GHAJAR (198719)
(bghajar@cooley.com)
COLETTE GHAZARIAN (322235)
(cghazarian@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, California 90401
Telephone:    (310) 883-6400
Facsimile:    (310) 883-6500

STEPHANIE SCHUYLER (*Pro Hac Vice*)
(sschuyler@cooley.com)
55 Hudson Yards
New York, NY 10001
Telephone:    (212) 479-6000
Facsimile:    (212) 479-6275

*Counsel for Defendant Meta Platforms, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| METABYTE, INC., | Case No. 3:23-cv-04862-VC |
| Plaintiff, | **DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND CERTAIN EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| v. | |
| META PLATFORMS, INC., | |
| Defendant. | **Hearing Date:** November 6, 2025 |
| | **Time:** 10:00 a.m. |
| | **Judge:** Vince Chhabria |
| | **Location:** 450 Golden Gate Avenue, San Francisco, CA 94102 |

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

**PLEASE TAKE NOTICE THAT** at 10:00 a.m. on November 6, 2025, or as soon thereafter as this Motion may be heard in the above-entitled Court, before the Honorable Vince Chhabria of the United States District Court, Northern District of California, San Francisco Courthouse, Courtroom 4 – 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Meta Platforms, Inc. ("Meta") will and hereby does move the Court for an order finding that this case is an "exceptional case" and awarding Meta its reasonable attorneys' fees and expert fees. Meta's Motion is made pursuant to Rule 54-5 of the Civil Local Rules for the Northern District of California, 17 U.S.C. § 1117(a), 28 U.S.C. § 1927, and the Court's inherent power and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Colette Ghazarian ("Ghazarian Decl.") and the exhibits thereto, all matters of which the Court may take judicial notice, all pleadings and papers on file in this action, and other written or oral argument that Meta may present to the Court.

### STATEMENT OF ISSUES TO BE DECIDED

1. Whether this is an "exceptional case" within the meaning of 17 U.S.C. § 1117(a) or independently satisfies 28 U.S.C. § 1927, justifying an award of attorneys' fees to Meta;
2. Whether Meta's request of $1,994,439.78 in attorneys' fees, an amount significantly lower than the total amount of fees it actually incurred in defense of the matter, and $762,173.71 in expert fees, is reasonable; and
3. Whether Metabyte, Inc. ("Metabyte") and its counsel, Karthik Murthy, should be held jointly and severally liable for such fees pursuant to 17 U.S.C. § 1117(a), 28 U.S.C. § 1927, and the Court's inherent power.

### STATEMENT OF RELIEF SOUGHT

Meta respectfully requests a finding that this is an "exceptional case" pursuant to 15 U.S.C. § 1117 and further requests an award of $1,994,439.78 in attorneys' fees and $762,173.71 in expert fees to be awarded to Meta under 15 U.S.C. § 1117, 28 U.S.C. § 1927, and the Court's inherent power. Pursuant to those same authorities, Meta also requests that Metabyte and its counsel, Karthik Murthy, be held jointly and severally liable for such fees.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- i -

META'S NTC OF MTN AND
MTN FOR ATTYS' FEES
3:23-CV-04862-VC

1

**TABLE OF CONTENTS**

2

**Page**

3    MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

4    I.    Introduction .................................................................................................... 1

      II.   Statement Of Facts ......................................................................................... 2

5

6          A.    Metabyte Files Infringement Claims and Threatens to Add a
                 Legally and Factually Baseless Genericness Claim to Pressure Meta
                 to Settle ................................................................................................. 2

7          B.    After Learning of Meta's Rebrand, Metabyte Manipulates its
                 Website and Files Trademark Applications for VR Services it Does

8                Not Offer ............................................................................................... 3

9          C.    Metabyte's Counsel Cedes Control of Discovery to its CEO,
                 Causing Delays, Incomplete Productions, and Unnecessary Motion

10               Practice ................................................................................................. 4

11         D.    Discovery Confirms that Metabyte's Claims are Unsupported, yet
                 Metabyte Persists Through Expert Discovery and Summary
                 Judgment ............................................................................................... 6

12
           E.    The Court Dismisses Metabyte's Claims on Summary Judgment ............. 6

13    III.  Legal Standards Governing Fee Motions .............................................................. 7

14    IV.   Argument ....................................................................................................... 8

15         A.    This is an Exceptional Case Entitling Meta to Fees under the
                 Lanham Act ............................................................................................ 9

16               1.    The Extraordinary Weakness of Metabyte's Infringement
                       Claim Makes this an Exceptional Case .......................................... 9

17               2.    The Frivolous Genericness Claim, Added to Extract a
                       Settlement, Makes this an Exceptional Case ................................ 10

18
                 3.    Metabyte's and its Counsel's Conduct Throughout
19                     Discovery Makes this an Exceptional Case .................................. 11

                 4.    Metabyte's Misrepresentations and Website Manipulation
20                     Make this an Exceptional Case .................................................... 11

21         B.    Expert Fees are Also Warranted as Sanctions Under 28 U.S.C. §
                 1927 and the Court's Inherent Power ...................................................... 12

22         C.    Metabyte and Its Counsel Are Jointly and Severally Liable for
                 Meta's Fees ........................................................................................... 13

23
           D.    Meta's Fee Request is Reasonable .......................................................... 14

24    V.    Conclusion ................................................................................................... 15

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accentra, Inc. v. Staples, Inc.*,
   2012 WL 12877868 (C.D. Cal. Jan. 3, 2012) ................................................................. 10

*Amusement Art, LLC v. Life is Beautiful, LLC*,
   768 F. App'x 683 (9th Cir. 2019) ........................................................................... 9, 12

*Banas v. Volcano Corp.*,
   47 F. Supp. 3d 957 (N.D. Cal. 2014) ....................................................................... 15

*Bell v. Oakland Cmty. Pools Project., Inc.*,
   2020 WL 13695114 (N.D. Cal. Oct. 14, 2020) ........................................................ 10

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991) ............................................................................................... 8, 12

*Dropbox, Inc. v. Thru Inc.*,
   2017 WL 914273 (N.D. Cal. 2017), *aff'd*, 728 F. App'x 717 (9th Cir. 2018) ....................... 11

*Elem Indian Colony of Pomo Indians of Sulphur Bank Rancheria v. Ceiba Legal, LLP*,
   230 F. Supp. 3d 1146 (N.D. Cal. 2017) ................................................................... 12

*Emerson Radio Corp. v. Emerson Quiet Kool Co.*,
   2023 WL 6387897 (D. Del. Sep. 29, 2023) .............................................................. 15

*EscapeX IP LLC v. Google LLC*,
   2023 WL 5257691 (N.D. Cal. Aug. 16, 2023) .......................................................... 10

*Finjan, Inc. v. Juniper Networks, Inc.*,
   2021 WL 3140716 (N.D. Cal. July 26, 2021) ........................................................... 12

*Gabriel Techs. Corp. v. Qualcomm, Inc.*,
   2013 WL 410103 (S.D. Cal. Feb. 1, 2013) ............................................................... 15

*Hall v. Cole*,
   412 U.S. 1 (1973) ...................................................................................................... 8

*Iconic Mars Corp. v. Kaotica Corp.*,
   2025 WL 2440887 (S.D. Cal. Aug. 25, 2025) ..................................................... 13, 14

*Int'l Bus. Advisors, Ltd. v. Payless Drug Stores N.W. Inc.*,
   1993 WL 237414 (N.D. Cal. Jan. 11, 1993) ........................................................ 10, 13

*In re Keegan Mgmt. Co. Sec. Litig.*,
   78 F. 3d 431 (9th Cir. 1996) ...................................................................................... 8

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Ketab Corp. v. Mesriani & Assocs.*,
2018 WL 4770723 (C.D. Cal. Sep. 27, 2018) ........................................................................ 13

*Ketab Corp. v. Mesriani & Assocs., P.C.*,
734 F. App'x 401 (9th Cir. 2018) .................................................................................... 8, 12

*N.T.A.A., Inc. v. Nordstrom, Inc.*,
2024 WL 1723524 (C.D. Cal Apr. 19, 2024) ........................................................................ 12

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
572 U.S. 545 (2014) ....................................................................................... 7, 8, 11, 13

*Primus Auto. Fin. Servs., Inc. v. Batarse*,
115 F.3d 644 (9th Cir. 1997) ............................................................................................ 13

*S.D. Comic Convention v. Dan Farr Prods.*,
807 F. App'x 674 (9th Cir. 2020) ...................................................................................... 11

*Sazerac Co. v. Fetzer Vineyards Inc.*,
2017 WL 6059271 (N.D. Cal. Dec. 7, 2017), *aff'd,* 786 F. App'x 662 (9th Cir.
2019) ............................................................................................................................... 9

*Sci. Applications Int'l Corp. v. United States*,
2021 WL 3557427 (Ct. Cl. July 26, 2021) ........................................................................... 15

*Stitch Editing Ltd. v. TikTok Inc.*,
2023 WL 6370910 (C.D. Cal. Sep. 2, 2023) ............................................................... 9, 10, 12

*Stone Creek, Inc. v. Omnia Italian Design, Inc.*,
875 F.3d 426 (9th Cir. 2017) ............................................................................................ 13

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
839 F.3d 1179 (9th Cir. 2016) (en banc) ............................................................................... 8

*Teetex, LLC v. Zeetex LLC*,
2022 WL 2439176 (N.D. Cal. July 5, 2022) ...................................................................... 9, 11

*Univ. Elecs., Inc. v. Univ. Remote Control, Inc.*,
2015 U.S. Dist. LEXIS 91403 (C.D. Cal. Mar. 10, 2015) ..................................................... 11

*Vineyard House, LLC v. Constellation Brands U.S. Operations, Inc.*,
619 F. Supp. 3d 970 (N.D. Cal. 2021) ...................................................................... 7, 9, 14

**Statutes**

15 U.S.C. § 1117 ..................................................................................................... i, 2, 7

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

28 U.S.C. § 1927 ................................................................................................................. *passim*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

I.    INTRODUCTION

3

More than two years after Facebook changed its corporate name to Meta, Metabyte—a

4

company that hires employees to staff them with its handful of clients—filed a trademark

5

infringement lawsuit alleging that its clients were likely to believe that Metabyte is Meta. (Dkt. 1).

6

When Meta did not capitulate to Metabyte's monetary demands, it upped the ante: threatening to

7

cancel Meta's trademarks as "generic" if Meta did not pay it an exorbitant sum. Meta did not give

8

in, and Metabyte amended its complaint to add a baseless genericness claim. (Dkt. 10).

9

In discovery, Metabyte's personnel distanced themselves from the allegations in the

10

Complaint. They admitted that there was no real-world confusion among Metabyte's clients or

11

evidence of any negative impact of Meta's rebrand on Metabyte's business. Although Metabyte

12

saw no reason to update its website to remove stale, incorrect, or misleading statistics about its

13

business, its CEO orchestrated various litigation-driven website changes: adding "Metabyte"

14

branding to different company websites and suddenly presenting itself as a "VR software and

15

hardware company." Metabyte even registered new domain names with "Meta" in them—just to

16

"challenge" Meta. This case was never about addressing real-world confusion or lost revenue, job

17

applicants, or clients attributable to Meta's rebrand. The record was devoid of such evidence.

18

Rather, Metabyte thought it could create settlement leverage by wielding baseless claims and

19

manufacturing evidence—hoping Meta would simply pay it off.

20

This case presents the unfortunate combination of an unreasonable litigant that refused to

21

heed the law and evidence, and an attorney who enabled his client to pursue baseless claims without

22

legal or factual support, even in the face of his client's admissions. Together, they knowingly

23

pursued weak and factually unsupported positions regarding consumer confusion and damage and

24

the alleged genericness of Meta's registered trademark; evaded their discovery obligations—

25

forcing Meta to seek judicial intervention four times; and made misrepresentations to Meta and to

26

the Court about Metabyte's business and the record. In the end, after months of litigation, the Court

27

dismissed Metabyte's claims, saying it was "not a close call."

28

All the hallmarks of an exceptional case are present here. Accordingly, Metabyte and its

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

META'S NTC OF MTN AND
MTN FOR ATTYS' FESS
3:23-CV-04862-VC

counsel should be held jointly and severally liable for Meta's fees under 15 U.S.C. § 1117(a), 28 U.S.C. § 1927, and the Court's inherent power. To be clear, Meta does not seek all of its fees. It seeks an award of $1,994,439.78, representing roughly 60% of the fees it incurred defending against Metabyte's claims and improper litigation positions. Meta also seeks an award of $762,173.71 for the expert fees it incurred in this case, under Section 1927 and the Court's inherent power.

**II.    STATEMENT OF FACTS**

**A.    Metabyte Files Infringement Claims and Threatens to Add a Legally and Factually Baseless Genericness Claim to Pressure Meta to Settle**

Nearly two years after Meta's rebrand, on September 22, 2023, Metabyte filed its complaint claiming trademark infringement. (Dkt. 1). Shortly thereafter, Metabyte sent a demand letter threatening that if Meta did not agree to pay it an astonishing $25M (for "co-existence") or $55M (for an assignment and license), Metabyte would amend its complaint to add a claim that META was "generic" and seek to cancel Meta's trademark registrations. (Dkt. 79 at 5-6; Dkt. 81-25 at 10-12). Meta refused to capitulate, leading Metabyte to amend its complaint in January 2024. (Dkt. 10, Claim 3). The genericness claim was farcical at the outset, exemplified by vague allegations that the term "meta" refers to unnamed "key aspects" of "a majority of the approximately 400 services" identified in Meta's trademark applications and (even more cryptically) to "the broader internet industry." (Dkt. 10 at 7-9). Metabyte failed to identify a single product or service offered by Meta that could be referred to as a "meta," which would be required to show the mark was generic under Ninth Circuit precedent. (*See generally id*.; Dkt. 79 at 20–21). Metabyte never substantiated or clarified its claim, even in discovery, insisting on summary judgment that the term "meta" is generic simply because it is "technical vocabulary" and a "functional prefix." (Dkt. 85 at 21-23).

When Meta hired a linguist, Phillip Carter, to provide expert testimony addressing the meaning and use of "meta" and establishing it is not generic, Metabyte did not even bother to rebut his testimony. (*Id.* at 22; Dkt. 93 at 19–20). Nor did Metabyte rebut Meta's evidence of the USPTO's registration of META—proof that the USPTO does not treat the term as generic. (Dkt. 79-2 at ¶¶ 12–13 & Exs. B–D). Metabyte witnesses admitted that when they hear META, they think of Meta—proof the term functions as a trademark. (Dkt. 79 at 20–21). Stuck on a baseless, settlement-driven theory, Metabyte was left with an argument that "meta" is an abstract prefix that,

when combined with certain other words, has "technical" applications. (Dkt. 85 at 21-22). Yet even this baseless argument would not support the claim that META is generic.

### B.    After Learning of Meta's Rebrand, Metabyte Manipulates its Website and Files Trademark Applications for VR Services it Does Not Offer

Months after Meta's rebrand, and in preparation for its lawsuit, Metabyte took steps to create a veneer of similarity between itself and Meta. (Dkt. 79 at 6–7). Well aware of Meta's famous VR products, in June 2022, Metabyte CEO Manu Mehta instructed his web designer, Dino Lau, to add tabs to the Metabyte homepage purporting to offer "VR Products" and "Virtual Reality Services" and to advertise a "VR200" virtual reality headset for sale. *Id*. Metabyte never actually offered any VR products or services. (*Id*.). Metabyte newly claimed it was a "pioneer of virtual reality," which Mr. Lau testified was untrue. (Ex. 7 at 171:9–175:3)[1]. Mr. Mehta instructed his son (not an employee) to order a few sample headsets from a manufacturer in China, to which he affixed the "Metabyte" logo. (Dkt. 79 at 6). But Metabyte never made a bona fide sale of such headsets, advertising them only to position itself to sue Meta. (*Id.*). Metabyte filed trademark applications[2] for VR products and services, misrepresenting to the USPTO both that the stereoscopic glasses it last sold in the late 1990s were VR products **and** that Metabyte currently offered such products— submitting the freshly conceived webpages as proof. (*Id*.). Metabyte then reiterated the misrepresentation that it offered VR products and services to the Court in its complaint. (Dkt. 10 ¶¶ 24-25). Only after Meta presented Metabyte with this damning chronology of Metabyte's litigation maneuvering did Mr. Mehta instruct Mr. Lau to remove those webpages. (Dkt. 79 at 6).

Metabyte made other changes to its website in the lead-up to filing the complaint. It added, for the first time, the METABYTE logo to two different business websites, HotDoodle (a dormant web design company) and Teamanics (a separate, failing startup that offered staffing and peer rating services). (Ex. 7 at 129:1–5; Dkt. 79 at 6-7). It did so to portray "Metabyte" as a web design company and "peer network." (*Id.*). Mr. Mehta instructed Mr. Lau to change the Teamanics website to make it look more like a social network and to update the name of the company to "Metabyte Peer Network," later shortening it to "MetaPeerNet" in an obvious attempt to mimic Meta. (*Id*.). Mr. Lau admitted that

---

[1] Unless otherwise stated, citations to "¶__" and "Ex. __" are to the accompanying Ghazarian Declaration's paragraphs and exhibits, and internal citations and quotations are omitted.
[2] Metabyte even tried to sell one of these bogus trademarks to Meta in a demand. Dkt. 80-37.

Cooley LLP
Attorneys at Law

META'S NTC OF MTN AND
MTN FOR ATTYS' FEES
3:23-CV-04862-VC

Metabyte's website was "highly misleading" in multiple respects. (Ex. 7 at 263:16–264:5). It suggested Metabyte offered services it did not—to look like Meta. (Dkt. 80-9 at 156:10–17). Metabyte also registered other domain names to "challenge" Meta, including metapeernetwork.com and metacareernet.net, which were "live" websites. (Dkt. 79 at 7). Metabyte's façade made its actual business a moving target in discovery and forced Meta to expend considerable resources uncovering Metabyte's misrepresentations—ultimately establishing that Teamanics is a dormant start-up run under that different name; that Metabyte did not offer any bona fide VR or "metaverse" products; and although its website and complaint suggested otherwise, Metabyte's *actual* business is an outsourced staffing company with only a handful of clients over the last seven years.

### C.    Metabyte's Counsel Cedes Control of Discovery to its CEO, Causing Delays, Incomplete Productions, and Unnecessary Motion Practice

Metabyte's obfuscation and misrepresentations—enabled by its counsel—continued throughout the litigation and caused delays and unnecessary fees. From the outset, Metabyte's counsel, Mr. Murthy, failed to reasonably supervise document collection and production, instead permitting Metabyte's CEO to unilaterally dictate the scope of discovery. Mr. Murthy initially allowed Metabyte's CEO to hand-pick a total of 400 documents, which included fewer than ten emails (Dkt. 50 at 1), for production. He then repeatedly represented to the Court that such document production was "complete" (Dkt. 33 at 4; Dkt. 37 at 4) and contained "no gaps" (Dkt. 33 at 5). These misrepresentations were exposed only after Meta filed multiple motions to compel further production. (Dkts. 33, 37, 50). At a December 17, 2024 hearing on Meta's second motion to compel, Judge Illman expressed concern that Mr. Mehta was "shield[ing]" information from Metabyte's counsel and ordered Mr. Murthy to properly supervise document production, warning him that if Metabyte's CEO did not permit Mr. Murthy to conduct a reasonable search for documents, Judge Illman would force Mr. Mehta to appear personally before the Court. (Ex. 3 at 24-25). Despite this warning, problems persisted; at a later hearing, Judge Illman again expressed concern that Mr. Mehta was still "micromanag[ing] . . . the discovery process." (Ex. 4 at 3-4).

Forced again to move to compel a reasonable document search and production, Meta asked the Court to enter an ESI protocol spelling out the requirements of that search. (Dkt. 50). Metabyte argued no ESI protocol was needed and "document production is nearly complete." (*Id.* at 3). Judge

Illman agreed with Meta, entering an order finding that "Metabyte's resistance to Meta's discovery demands . . . amount[s] to attempted stonewalling such as to stall and run out the clock for document production." (Dkt. 51 at 4). Judge Illman observed with concern that "Metabyte's counsel appeared to tacitly concede that Metabyte's CEO  . . . had taken responsibility for document production unsupervised by counsel, notwithstanding the contrary representation in the letter brief now pending before the court." (*Id*.). The Court entered an ESI protocol and ordered Metabyte to conduct a compliant, reasonable ESI search. (*Id*.; Dkt. 53). Meta proposed search terms to Metabyte and, rather than objecting or proposing changes to those terms, Metabyte ran them and—***without reviewing them*** for responsiveness or privilege—***dumped 100,000 documents*** on Meta—mere days before depositions. (Ex. 5 at 13-18). To make matters worse, at Metabyte's CEO's direction, counsel indiscriminately marked the *entire* production "Attorneys' Eyes Only" in violation of the ESI order. (*Id*.). The abuse of the "AEO" designation prevented Meta's in-house attorneys from reviewing those documents or sitting in on depositions involving those documents. Metabyte also made improper relevance redactions in its productions of Slack communications and financial documents, forcing Meta to file yet another motion to compel. (Dkt. 54 at 2-3).

Written discovery proceeded similarly: Metabyte refused to respond fully to written discovery requests and served inconsistent responses to interrogatories and requests for admission, including about issues central to the dispute, e.g., whether Metabyte was aware of any evidence of confusion or damages, forcing Meta to file iterative motions to compel—often multiple motions as to the very same requests—to obtain complete responses. (*E.g.*, Dkts. 33, 37, 54).

Aside from stonewalling Meta's discovery efforts, Metabyte also failed to timely seek discovery on its own claims, leading to unnecessary delays and motion practice. While Meta served discovery immediately, Metabyte did not until *over a year* after its lawsuit—forcing the parties to request a discovery extension so that Meta could identify and produce responsive documents before depositions were taken. (Dkt. 47). Then, Metabyte sought to take discovery in reverse, seeking the deposition of Meta's CEO Mark Zuckerberg before any others, and filing a baseless motion to compel that deposition (Dkt. 49). Even after the Court summarily rejected its efforts (Dkt. 51), Metabyte sought to evade the Court's order by moving to compel a "tentatively reserve[d] date"

for Meta's CEO deposition, which was again denied. (Dkt. 65 at 3-4; Dkt. 68 (order)).

In all, Metabyte's delays and obfuscation forced Meta to file three (successful) motions to compel and left Meta no choice but to agree to request two extensions of the discovery schedule to give it time to review Metabyte's eleventh-hour document dump and to search for and produce documents in response to Metabyte's belated requests. (Dkts. 47, 65). This unnecessarily drove up the cost of discovery, resulting in over $1.5M for discovery alone. (¶¶ 5, 13; Ex. 1 at 1–5).

### D. Discovery Confirms that Metabyte's Claims are Unsupported, yet Metabyte Persists Through Expert Discovery and Summary Judgment

After obfuscating and delaying for months, and after one of Meta's successful motions to compel, Metabyte finally eventually admitted in sworn responses and testimony that it had no evidence of (1) confusion among its actual consumers[3] (Dkts. 80-1–80-4) *or* (2) of any financial harm caused by alleged confusion. (Dkts. 80-5–80-8; Dkt. 89-43 at No. 23 (admitting Metabyte "is unable to identify specific monetary damages caused by confusion")). At that point, Metabyte could have ended the folly. Instead, it doubled down and refused to dismiss or limit its claims—forcing multiple expert reports and depositions, *Daubert* motions, and summary judgment. It baselessly insisted that its unsupported damages "theories," without more, were sufficient to survive summary judgment. (*See* Dkt. 85 at 21). It engaged an unqualified expert, Jeremy Sheff—a law professor with no economics background—to devise baseless "damages" theories that he ***admitted*** were unsupported by facts. (Dkt. 93 at 2-3). Given its sworn discovery admissions and the evidence, Metabyte *should* have conceded the lack of damages or any conceivable confusion by its clients. Its failure to do so caused Meta to incur significant expense. (¶¶ 5, 22).

Metabyte's summary judgment papers also repeated its misrepresentations about the nature of its business, including that Teamanics business was an active "peer networking service" and that HotDoodle was an active web design business—though both were dormant and never marketed under the METABYTE brand. (*Compare* Dkt. 85 at 3, *with* Dkt. 93 at 10-11).

### E. The Court Dismisses Metabyte's Claims on Summary Judgment

On August 14, during oral argument on the parties' summary judgment motions, Metabyte's

---

[3] Recognizing the lack of evidence that any customers were confused, Metabyte pivoted late to claim that potential employees might be confused. It was unable to substantiate that claim, too (*i.e.*, —that a job seeker did or would not take a job with Metabyte due to confusion). (Dkt. 109 at 1).

counsel took liberties with the record. He represented that job seekers who called Metabyte were allegedly confused about an affiliation between Metabyte and Meta and "hung up before" Metabyte's Director of Client Services, Aradhana Mehta, was able to "clarif[y] that Metabyte is not affiliated with Meta." (Ex. 6 at 19-20). That was nowhere in the record. Ms. Mehta herself testified that those two conversations went on for several minutes, that the exchanges about "meta" supposedly occurred during the middle of the call, and that those job applicants never told her why they did not follow through. (*See* Dkt. 80-11 at 103-122). When pressed by the Court, Mr. Murthy admitted there was no record evidence to support his assertion that the job seekers failed to seek employment with Metabyte due to alleged confusion. (Ex. 6 at 19-20). He also argued that "initial interest confusion would cause a prospective job seeker to skip the [Metabyte] job ad altogether" (*id*. at 5)—but the theory that initial *interest* would cause a person to skip an ad was nonsensical, unsupported, and legally unrecognized. Finally, he falsely claimed that, as between the pandemic or Facebook's name change, the latter was "the factor" that affected Metabyte's declining revenues (*id.* at 5-6), again contradicted by Metabyte's CEO's sworn testimony explaining that the pandemic and his own business decisions caused the decline—not any alleged confusion over the name change. (Dkt. 79 at 3 (citing Metabyte's 30(b)(6) deposition testimony)). The very next day, the Court granted Meta's motion for summary judgment on all of Metabyte's claims (Dkt. 109) and entered judgment against Metabyte (Dkt. 110). Metabyte has since filed a notice of appeal. (Dkt. 124).

## III.    LEGAL STANDARDS GOVERNING FEE MOTIONS

Attorneys' fees are available under the Lanham Act in an "exceptional case[]." 15 U.S.C. § 1117(a). An "exceptional case[]" is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Vineyard House, LLC v. Constellation Brands U.S. Operations, Inc.*, 619 F. Supp. 3d 970, 972 (N.D. Cal. 2021) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). "[D]istrict courts analyzing a request for fees under the Lanham Act should examine the 'totality of the circumstances' to determine if the case was exceptional, exercising equitable discretion in light of the nonexclusive

factors identified" by the Supreme Court "and using a preponderance of the evidence standard." *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016) (en banc). Those nonexclusive factors include "frivolousness, motivation, objective unreasonableness (both in factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 572 U.S. at 554.

Fees can also be awarded against a party *and its counsel* under Section 1927, which provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Sanctions are available under Section 1927 where "supported by a finding of subjective bad faith," which "is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *In re Keegan Mgmt. Co. Sec. Litig.*, 78 F. 3d 431, 436 (9th Cir. 1996); *Ketab Corp. v. Mesriani & Assocs., P.C.*, 734 F. App'x 401, 411–12 (9th Cir. 2018) (affirming fees award based on exceptionality and sanction award against counsel).

Finally, a court may award attorneys' fees against a party and its counsel under its inherent power "when the interests of justice so require." *Hall v. Cole*, 412 U.S. 1, 4–5 (1973). Attorneys' fees are appropriate where a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991). Such sanctions serve a "dual purpose": first, to "vindicat[e] judicial authority," and second, to "make the prevailing party whole for expenses caused by its opponent's obstinacy." *Id.* at 46; *see also Ketab*, 734 F. App'x at 412.

## IV. ARGUMENT

Given the extraordinary weakness of Metabyte's legal positions, its discovery misconduct, website maneuvering, misrepresentations, and its refusal to acknowledge the lack of evidence—motivated by the prospect of a huge payday rather than any real-world confusion or harm—this is an exceptional case entitling Meta to an award of fees. And because Metabyte's counsel enabled the misconduct that made this case exceptional, it is appropriate for the Court to hold Metabyte and Mr. Murthy jointly and severally liable for those fees. Meta therefore requests recovery of $1,994,439.78 in attorneys' fees and $762,173.71 in expert fees.

**A.     This is an Exceptional Case Entitling Meta to Fees under the Lanham Act**

This case is exceptional in *both* the "substantive strength of a party's litigation position" *and* the "unreasonable manner in which the case was litigated." *Vineyard House*, 619 F. Supp. 3d at 972. Each independently justifies an award of fees. "With regard to the substantive strength of a party's litigation position, courts in this district tend to award fees when a plaintiff persists with a clearly untenable claim or adduces no evidence in support of its position." *Teetex, LLC v. Zeetex LLC*, 2022 WL 2439176, at \*2 (N.D. Cal. July 5, 2022). This is such a case, as both Metabyte's infringement claim and its genericness claim were "exceptionally meritless." *Id.*, at \*2–3.

**1.     The Extraordinary Weakness of Metabyte's Infringement Claim Makes this an Exceptional Case**

Metabyte's trademark infringement claims were remarkably weak in that, among other defects, Metabyte *admitted* there was never any evidence that any Metabyte consumers had been confused, let alone that Metabyte had been harmed financially by any alleged confusion. *Supra* § II.D.[4] Nonetheless, it continued to pursue its meritless claims, including by falsely asserting at the summary judgment hearing, without any evidence to support it, that it had been harmed. *Supra* § II.D-E. A fee award is appropriate in cases like this, where the plaintiff fails to support its infringement claims on summary judgment. *See*, *e.g.*, *Amusement Art, LLC v. Life is Beautiful, LLC*, 768 F. App'x 683, 687 (9th Cir. 2019) (affirming fees for "extraordinarily weak" claims that had "no chance of succeeding" on summary judgment); *Stitch Editing Ltd. v. TikTok Inc.*, 2023 WL 6370910, at \*4 (C.D. Cal. Sep. 2, 2023) (case exceptional where plaintiff did not produce "any evidence that a single customer or potential customer was confused" or "that [it] suffered any reputational harm, or that it lost business as a result of Defendants' conduct" (ultimately denying fees due to defendants' misconduct)); *see also Teetex*, 2022 WL 2439176, at \*3.

Metabyte's persistence in pursuing its meritless infringement claims even after it *knew* they lacked merit (*supra* § II.C-D further underscores the exceptional nature of this case. *See also Sazerac Co. v. Fetzer Vineyards Inc.*, 2017 WL 6059271, at \*10 (N.D. Cal. Dec. 7, 2017), *aff'd*, 786 F. App'x 662, 665 (9th Cir. 2019) (awarding fees where a trademark plaintiff continued to

---

[4] This included extensive resources addressing (including via rebuttal expert) Mr. Sheff's baseless damages theories even though he and Metabyte admitted there was no factual predicate. *See* §II.D.

litigate a claim for injunctive relief—finding that it was "objectively unreasonable to proceed without evidence of irreparable harm"). In cases like this one, where a plaintiff's claims are (as the Court recognized) "not a close call" (Dkt. 109 at 1), an award of attorneys' fees is appropriate. *See Accentra, Inc. v. Staples, Inc.*, 2012 WL 12877868, at *3 (C.D. Cal. Jan. 3, 2012) (awarding fees where "summary judgment was not a close question for the Court" on trademark claims).

### 2. The Frivolous Genericness Claim, Added to Extract a Settlement, Makes this an Exceptional Case

Metabyte's genericness claim was so nonsensical that in deposition, none of its witnesses could explain its basis. It was plainly conceived for the improper purpose of trying to extract a massive settlement. *Supra* §II.A. Coupling a frivolous claim to an absurd demand (here, $25-55M (*id.*)) supports a finding that the plaintiff acted with a "suspect motive" and further compels an award of fees. *See Bell v. Oakland Cmty. Pools Project., Inc.*, 2020 WL 13695114, at *6 (N.D. Cal. Oct. 14, 2020); *see also Int'l Bus. Advisors, Ltd. v. Payless Drug Stores N.W. Inc.*, 1993 WL 237414, at *1, *4 (N.D. Cal. Jan. 11, 1993) (plaintiff's "outrageous settlement demands" and "*persisting* in positions shown plainly to be insupportable" supported award); *see also Stitch Editing*, 2023 WL 6370910 at *4-5 (finding case exceptional because of the "absence of any suggestion that any customers had been confused or that [it] had been harmed," combined with the plaintiff's "wildly unrealistic demand for hundreds of millions of dollars," which demonstrated that the plaintiff "viewed this case as an attractive opportunity to extract a windfall from wealthy defendants" and awarded the defendant attorneys' fees); *EscapeX IP LLC v. Google LLC*, 2023 WL 5257691, at *1–2 (N.D. Cal. Aug. 16, 2023) (Chhabria J.) (awarding fees in "exceptional" patent case, because of "an effort to force a modest settlement by pestering a tech giant with a frivolous suit on the assumption that the tech giant will prefer to capitulate than fight back").

Similarly, Metabyte's genericness claim here was frivolous at the outset: an incoherent attack that "meta" is supposedly generic for everything that Meta offers. Metabyte was never able to articulate how or why. Its own witnesses admitted that META is a recognized trademark—not a generic term. (Dkt. 93 at 19-20). Metabyte had no answer to Meta's linguist's report or the USPTO's registration of META trademarks. § II.A. Still, Metabyte and its counsel persisted through summary judgment—focused on extracting a payoff. This, too, makes the case exceptional.

3.      **Metabyte's and its Counsel's Conduct Throughout Discovery Makes this an Exceptional Case**

A court can also find a case exceptional based on "the unreasonable manner in which [it] was litigated." *Octane Fitness*, 572 U.S. at 554–55. Such unreasonable conduct can include "failure to comply with court rules, persistent desire to re-litigate issues already decided, advocacy that veered into gamesmanship, and unreasonable responses to the litigation." *S.D. Comic Convention v. Dan Farr Prods.*, 807 F. App'x 674, 676 (9th Cir. 2020). Metabyte and its counsel are guilty of numerous instances of discovery misconduct that justify a fee award, ranging from the failure to oversee a reasonable ESI search, provide complete written discovery responses, or take discovery until nearly the end of the discovery period (forcing multiple extensions of the case schedule) to dumping 100,000 documents on Meta on the eve of depositions without review, indiscriminately designating of all of those documents as "Attorneys' Eyes Only," and pursuing the deposition of Meta's CEO before taking any other depositions. *See supra* § II.C. As a result of this conduct, Meta was forced to bring several motions to compel and defend against Metabyte's baseless discovery motions, all of which increased the attorneys' fees it incurred. *See* ¶¶ 5(c)–(d).

This is precisely the kind of discovery misconduct that courts in this Circuit have held justifies a fee award. *See Dropbox, Inc. v. Thru Inc.*, 2017 WL 914273, *3 (N.D. Cal. 2017), *aff'd*, 728 F. App'x 717 (9th Cir. 2018) (affirming fee award where district court found a "pattern of inaccurate responses and representations" in discovery responses); *Teetex*, 2022 WL 2439176, at *3 (awarding fees in part due to plaintiff's "failure to diligently prepare and propound discovery"); *Univ. Elecs., Inc. v. Univ. Remote Control, Inc.*, 2015 U.S. Dist. LEXIS 91403, at *15–16 (C.D. Cal. Mar. 10, 2015) (under analogous statute, finding patent case exceptional, citing plaintiff's evasive discovery responses and failure to supplement in a timely or straightforward manner). Given the fees Meta incurred pursuing discovery and holding Metabyte to its obligations under the Rules and the Court's orders, a fee award is particularly appropriate here.

4.      **Metabyte's Misrepresentations and Website Manipulation Make this an Exceptional Case**

Metabyte and its counsel made numerous misrepresentations about the substance of its claims that obfuscated how unsupported they really were. These misrepresentations also justify a fee award.

1    Months after Meta's rebrand, Metabyte manipulated its website to create a veneer of similarity

2    between its "products" and services and those of Meta. *Supra* § II.B. It misrepresented its business to

3    Meta and the public (*e.g.*, claiming a longstanding "VR software and hardware" business; exaggerating

4    the scope of Teamanics and HotDoodle; suggesting that it had a "technology" business serving many

5    companies when, in fact, all it offered in recent years was outsourced staffing services to a few large

6    companies). *Id.* It misrepresented evidence to the Court, as well. *Id.,*§ II.E.  In totality, these support a

7    finding that this case is exceptional. *See, e.g.*, *Stitch Editing Ltd.*, 2023 WL 6370910, at *6 (finding

8    exceptional case in part because "plaintiff also changed its website a few months before trial and

9    admitted that supporting this lawsuit was a factor in the new design"); *Elem Indian Colony of Pomo*

10   *Indians of Sulphur Bank Rancheria v. Ceiba Legal, LLP*, 230 F. Supp. 3d 1146, 1150–51 (N.D. Cal.

11   2017) (awarding fees based in part on "misrepresentations and misleading statements").

12       Metabyte also misrepresented its business to the USPTO. It filed an application to register

13   the METABYTE mark in connection with VR products in which it falsely claimed that Metabyte

14   currently offered for sale glasses it had not offered since the late 1990s (stereoscopic glasses, not

15   "VR" products). (Dkt. 79 at 6). This, too, supports exceptionality. *See Amusement Art*, 768 F. App'x

16   at 687 ("The claims for registered marks were 'exceptional' because the registrations were procured

17   fraudulently . . . ."). Any of these falsehoods alone would justify a fee award in this case; together,

18   they demonstrate a "pattern of deception" that compels one. *N.T.A.A., Inc. v. Nordstrom, Inc.*, 2024

19   WL 1723524, at *3 (C.D. Cal Apr. 19, 2024) (same, where plaintiff engaged in a "pattern of

20   deception and deletion" to hide the weakness of its infringement claims).

21   **B.    Expert Fees are Also Warranted as Sanctions Under 28 U.S.C. § 1927 and the Court's Inherent Power**

22       Section 1927 and the Court's inherent power provide an independent justification for an

23   award of fees, as well as an award of Meta's expert fees incurred in this action. "Expert fees . . .

24   can be awarded as sanctions pursuant to Section 1927 or a court's inherent powers." *Finjan, Inc. v.*

25   *Juniper Networks, Inc.*, 2021 WL 3140716, at *3 (N.D. Cal. July 26, 2021). Metabyte and its

26   counsel "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S.

27   32, 45–46 (1991); *Ketab Corp.*, 734 F. App'x. at 411–12. Their misconduct, as described above,

28   was driven by a bad faith motive to secure a windfall. Metabyte, enabled by its counsel, repeatedly

disregarded its discovery obligations and took unreasonable positions throughout this litigation, while it hung its hat on frivolous legal theories that were wholly unsupported by the evidence. *See, e.g., id.* As a result, Meta was forced to incur needless legal fees and over $700,000 in expert fees.

### C.    Metabyte and Its Counsel Are Jointly and Severally Liable for Meta's Fees

The Court has authority to hold a party and its counsel jointly and severally liable for an award of fees under the Lanham Act, 28 U.S.C. § 1927, and the Court's inherent power. Mr. Murthy's repeated discovery misconduct (including allowing Metabyte's CEO to control discovery), knowing pursuit of frivolous arguments, and lack of diligence and candor amounted to bad faith and unnecessarily prolonged this litigation. § II.C-D. Although Mr. Murthy could reasonably be held jointly and severally liable for *all* of Meta's requested fees, the Court may consider holding Mr. Murthy liable for 20% of the total fee request.

Under the Lanham Act, courts in this Circuit award fees against counsel where the attorney participated in the misconduct that justifies the fee award. *See, e.g., Ketab Corp. v. Mesriani & Assocs.*, 2018 WL 4770723, at *3–7 (C.D. Cal. Sep. 27, 2018) (following a Ninth Circuit order that the district court delineate sanctions as between plaintiff and his counsel, finding that both "engaged in conduct which unnecessarily prolonged the case with respect to" meritless infringement claims, and ordering half of fee award as against counsel). "[I]ncomplete and evasive" discovery responses, "making and maintaining outrageous settlement demands," and "persisting in positions shown plainly to be insupportable" can subject an attorney to liability for fees. *Int'l Bus. Advisors*, 1993 WL 237414, at *1, *4; *see also Iconic Mars Corp. v. Kaotica Corp.*, 2025 WL 2440887, at *8 (S.D. Cal. Aug. 25, 2025) (awarding fees against counsel who "advocated [a position that] was meritless and contrary to the facts and the law" and made misrepresentations to the Court).[5]

Metabyte's counsel bears responsibility for Metabyte's misconduct in this action. Mr. Murthy

---

[5] Likewise, courts have applied Section 1927 and their inherent power to hold counsel liable for fees arising from their own misconduct. *See Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 443–44 (9th Cir. 2017) (upholding award against counsel under Section 1927 for fees resulting from attorney's refusal to dismiss damages claims despite having "no evidence to support" them); *Ketab Corp.*, 2018 WL 4770723, at *7 (apportioning half of total fee award under Section 1927 as attributable to attorney's "reckless pursuit" of unsupported trademark infringement claims); *Octane Fitness*, 572 U.S. at 554; *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997) ("bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent").

abdicated his duty to supervise discovery, instead allowing his client to control document production and engage in "stonewalling." Dkt. 51 at 4; *supra* § II.C. He further enabled this misconduct by repeatedly misrepresenting to Judge Illman the completeness of Metabyte's production and his role in it. *Id.* Mr. Murthy also unnecessarily prolonged the proceedings by delaying in seeking discovery, allowing a late dump of 100,000 documents, and pursuing improper Apex depositions in an effort to harass Meta. *Id.* He persisted in advocating unreasonable litigation positions on Metabyte's behalf in the face of a contrary record and misrepresented that record to the Court, including during the summary judgment hearing. *Id.*, §§ II.D-E; *see Iconic Mars*, 2025 WL 2440887, at *8. He maintained a genericness claim he knew was meritless and insisted that Metabyte has been "harmed by consumer confusion," notwithstanding the lack of such evidence. *Id.,* § II.A. Mr. Murthy's failure to advise his client to limit or dismiss its claims given the dearth of supporting evidence unnecessarily prolonged this case and caused Meta to incur millions in fees and over $750,000 in expert expenses. (¶ 22).

### D.    Meta's Fee Request is Reasonable

Meta incurred nearly $4M in legal and expert fees to defend itself in this litigation over nearly two years. (¶¶ 18, 22). For purposes of this motion, Meta has pared down that request to approximately $2M in attorneys' fees and $762,173 in expert fees, which is reasonable under the circumstances. (¶¶ 12-18). To "calculate reasonable attorneys' fees . . . under the Lanham Act, courts utilize the lodestar method," which "is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation . . . by a reasonable hourly rate for the region and for the experience of the lawyer." *Vineyard House*, 619 F. Supp. 3d at 975.

Cooley[6] billed Meta on a fixed-fee basis by task rather than at an hourly rate but maintained time records and required all timekeepers to track all time billed to ensure that those time records were accurate. (¶¶ 8-10). The fixed-fee amounts billed were commensurate with amounts that would have been incurred under a time-based fee structure. (¶ 18). Meta calculated the lodestar amount here ($2,216,044.20) by multiplying the relevant hours from those time records by a discounted hourly rate. (¶16). **Exhibit 1** to the Ghazarian Declaration summarizes how Meta arrived at its $1,994,439.78 fee request. (¶¶ 5–6). As detailed in that declaration (¶¶ 5–6, 13–17,

---

[6] Cooley is an international firm with trademark expertise. Background on the firm, the responsible team, their roles, and their experience are described in the Ghazarian Declaration at ¶¶ 4, 23-24.

Ex. 1), the lodestar amount accounts for work performing numerous tasks (*e.g.*, review and production of over 20,000 documents, review of Metabyte's 100,000-plus document production, eleven fact witness depositions, six expert depositions, etc.) The declaration also outlines all expert expenses. (¶ 22).

Cooley's standard hourly rates for attorneys and paralegals have been approved by various courts. *See, e.g.*, *Emerson Radio Corp. v. Emerson Quiet Kool Co.*, 2023 WL 6387897, at *4 (D. Del. Sep. 29, 2023) (finding Cooley rates reasonable in trademark infringement case); *Sci. Applications Int'l Corp. v. United States*, 2021 WL 3557427, at *3 (Ct. Cl. July 26, 2021) (finding Cooley rates reasonable in patent case); *Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 965 (N.D. Cal. 2014) (Cooley rates "within . . . market rates for similar cases in the Northern District"); *Gabriel Techs. Corp. v. Qualcomm, Inc.*, 2013 WL 410103, at *9–10 (S.D. Cal. Feb. 1, 2013) (similar). *See* ¶ 11 (outlining cases approving comparable rates).

Moreover, the attorneys' fees Meta seeks in this matter are in fact *far lower* than they would be if calculated using Cooley's hourly rates or under its fixed fee arrangement. As detailed in the declaration (¶¶ 13, 15), Meta ***excluded*** several categories of billed fees from its fee request in an effort to tailor its request to cover only those fees incurred as a result of Metabyte's relentless pursuit of meritless positions, obfuscation and delay in discovery, and misrepresentations to Meta and to the Court, *supra*, §§ II.A-D. Finally, to ensure that there is no dispute over the reasonableness of its fee request, Meta has applied a further 10% reduction.[7] (*Id.* ¶ 17). Meta's fee request of $1,994,439.78 does not cover all of its fees (billing to Meta totaled over $3.1M through summary judgment).[8]

## V.    CONCLUSION

Meta respectfully requests that the Court enter a total award of $1,994,439.78 in attorneys' fees and $762,173.71 in expert fees, jointly and severally against Metabyte and its counsel, and such other or additional relief the Court deems proper. The Court may elect to split that award 80/20 as between Metabyte and its counsel. Meta respectfully reserves the right to seek additional fees for work done on or after (per Dkt. 122) the filing of this motion.

---

[7] Notably, Metabyte's CEO represented that Metabyte's legal fees incurred were **over $1 million**. (¶ 20). Metabyte is in no position to complain about the reasonableness of Meta's request.

[8] Meta's counsel previewed this request to Metabyte's counsel and asked whether Metabyte would stipulate that the approximately $2M fee request was reasonable. It did not respond.  (¶ 3).

1    Dated:    September 26, 2025                    COOLEY LLP

2

3                                                    By:

4                                                    Bobby Ghajar
                                                     Stephanie Schuyler
5                                                    Colette Ghazarian

6                                                    Attorneys for Defendant
                                                     META PLATFORMS, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW