KARTHIK K. MURTHY – State Bar No. 343960
K@MurthyPatentLaw.com
MURTHY PATENT LAW INC.
3984 Washington Blvd., Suite 324
Fremont, CA 94538
Telephone: (425) 968-5342
Facsimile: (425) 215-0247

Attorneys for Plaintiff
Metabyte, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| METABYTE, INC.<br><br>            Plaintiff,<br><br>    v.<br><br>META PLATFORMS, INC. and DOES 1-25, inclusive,<br><br>            Defendants. | Case No: 3:23-cv-04862-VC<br><br>**PLAINTIFF METABYTE, INC.'S OPPOSITION TO DEFENDANT META PLATFORMS, INC.'S MOTION FOR ATTORNEY'S FEES**<br><br>Hearing Date:  November 6, 2025<br>Time:              10:00 a.m.<br>Judge:            Vince Chhabria<br>Location:        450 Golden Gate Avenue<br>                     San Francisco, CA 94102 |

A case lost at summary judgment does not make it "exceptional" and this motion should be denied. Meta Platforms, Inc.'s motion is not brought in good faith but rather brought as a tool to pressure Metabyte, Inc. into abandoning its right to appeal the summary judgment motion. Indeed, Meta Platforms, Inc. threatened this motion for fees if Metabyte, Inc. did not abandon its appeal. When Metabyte, Inc. refused, Meta Platforms, Inc. filed this motion and included Metabyte, Inc's attorney.

Meta Platforms, Inc. is a behemoth in the tech industry compared to Metabyte, Inc., a small business, and almost every other tech company that uses "Meta" in its branding. Metabyte, Inc. could not convince this court that its evidence was sufficient to overcome summary judgment, but that does not mean its claims were totally lacking in merit or that it conducted itself in a manner warranting the extraordinary relief Meta Platforms, Inc. is demanding. To the contrary, Metabyte, Inc. believed in its case in good faith, and should not be punished for daring to challenge Meta Platforms, Inc.

# I.    **STATEMENT OF FACTS**

Meta Platforms, Inc. ("Meta") rebranded in October 2021, consolidating under one central brand all of its well-known social media platforms including Facebook, Instagram, Messenger and WhatsApp. Meta knew or should have known that its rebrand would cause great concern to third parties like Metabyte, Inc. ("Metabyte"), which owned META-formative marks and had used them for years.

Meta argues that Metabyte's efforts to settle throughout the case is evidence of bad faith. This could not be farther from the truth and, quite frankly, ironic since Meta used the threat of this motion requesting $2M to persuade Metabyte to waive its appeal rights. Metabyte's sincere and repeated efforts to resolve this dispute reflect a good-faith attempt to avoid a protracted legal battle with a far larger adversary. How is Metabyte's efforts to resolve this dispute in bad faith but Meta's efforts are not? Prior to filing suit, Metabyte requested a one-time settlement payment of $1.5 million or, alternatively, proposed a business relationship in which Meta would try Metabyte's staffing services. Under this second option, Meta would pay $1.75 million in gross margin, which Metabyte would credit back, so the cost of settlement to Meta would come to zero while allowing Metabyte the potential benefit of a future business relationship . For an expeditious resolution, Metabyte also offered to sell to Meta its pending Class 9 trademark registration for virtual reality eyeglasses for $1 (one dollar). (Mehta Dec. ¶ 2.) Meta turned down the offers.

Meta argues that Metabyte threatened to invalidate Meta's trademarks as "generic". This wasn't a threat, this was a statement of fact because Metabyte believed, and continues to believe, that 'Meta' as a standalone term is unprotectable in the software and internet industries. 'Meta' is a commonly used prefix for generic META-formative terms, such as 'metadata,' and for META-formative trademarks, such as 'Metabyte.' Meta's adoption of the trademark 'Meta' monopolizes a generic term and creates confusion in the marketplace. Meta exacerbates the problem by introducing META-formative proprietary marks like 'Meta AI' and 'Meta Pay' that seem to belong to the longstanding family of META-formative generic terms like 'metadata,' 'meta title, 'meta tag, and others. Does anyone actually successfully threaten Meta? Or do businesses and developer communities not brave enough to confront the giant that is Meta do their best to preserve their brands and generic terms from being diluted by Meta? That is what Metabyte tried to do with this lawsuit – save its brand, test the boundaries of trademark law on reverse confusion, and clarify that the definition of 'generic' under Lanham Act does not permit any party to privatize a functional linguistic tool.

Meta claims that Metabyte threatened to add a genericness claim to pressure Meta to settle. This is false. The declaration of Mr. Mehta in support of its motion for partial summary judgment provides a detailed timeline of Meta's 18-month effort to negotiate a resolution with Meta, including obtaining extensions of time to oppose Meta's trademark application, i.e. presenting the PTO with its genericness claim of Meta's new trademark. Meta either completely ignored Metabyte's communications or blew off Metabyte by responding with "we are looking into it. We will provide you with a substantive response as soon as possible" only to allow months to go by without the promised response.

Meta's scorched-earth litigation tactics turn the narrative entirely against Metabyte. When Meta could not prevail on the similarity of sight, sound, or commercial impression between "Meta" and "Metabyte," it shifted strategy and manufactured an argument of alleged "unclean hands." But there is nothing unclean about Metabyte adding its own name to the taglines of its various businesses—particularly when Metabyte neither intended to, nor did, rely on evidence of actual confusion. Meta even subjected Metabyte's part-time graphic designer to nearly seven hours of unnecessarily aggressive deposition questioning—merely for following instructions to add the tagline "Web Services by Metabyte" to Metabyte's HotDoodle business, and for experimenting with the taglines "Metabyte Career Platform," "Metabyte Career Network," and "Metabyte Peer Network" on Metabyte's Teamanics website. (Murthy Dec. ¶ 7.)

Meta even mischaracterizes Metabyte's legitimate settlement efforts as a "shakedown," while omitting the modest $1.5 million and zero-cost proposals Metabyte initially made, as explained above, and selectively highlights later events out of context. While navigating its frustrating interactions with Meta, Metabyte recognized that its 30-year-old brand had a fair market value exceeding $55 million. As things escalated, Metabyte submitted settlement proposal at $25 million, later reducing the amount to $18.75 million— reflecting state of mind of a good-faith compromise. Meta, however, presents these figures in isolation, framing them as "shakedown" attempts.

Following the Court's order granting summary judgment, Meta approached Metabyte threatening this motion unless Metabyte waived its right to appeal. Metabyte was unwilling to waive its appeal rights and thus Meta filed this motion seeking a multimillion-dollar award. If Meta's argument that Metabyte's effort to settle the case is evidence of a shakedown, the same must be said of Meta's effort to avoid an appeal – this motion is, in effect, a shakedown because Metabyte respectfully seeks review of the Court's order on

1  summary judgment, as its right.

2      During discovery, Meta propounded a whopping 314 written discovery demands and disputes arose

3  requiring court intervention with only 32 of those 314 demands. Metabyte complied with its discovery

4  obligations and court orders.

5      Meta argues that Metabyte refused to heed the law and evidence, but that is unsupported by the record.

6  Metabyte did its best to keep up with the scorched earth litigation tactics employed by Meta which at times

7  buried Metabyte. Metabyte's verified discovery responses were indeed believed to be complete and

8  responsive, and Meta disagreed. (Mehta Dec. ¶ 3.) When Meta provided ESI search terms with wild cards

9  and proximity indicators that exponentially expanded Metabyte's document production,  effectively

10 conducting a broad fishing expedition that prejudiced Metabyte, yet Metabyte complied and Meta

11 complained that Metabyte's production was too big. Meta was never satisfied, effectively attempting to

12 penalize Metabyte for the very burden Meta itself imposed. The reality is that Metabyte and its counsel

13 worked diligently together in good faith at all times to adhere to the obligations required under the discovery

14 statutes. (Mehta Dec. ¶ 4.) Meta always found something to complain about.

15     In response to Meta's motion for summary judgment, Metabyte argued that the likelihood of confusion

16 can be shown by survey, and that proof of actual confusion is not required because the Ninth Circuit has

17 recognized that "[b]ecause of the difficulty in garnering [actual confusion] evidence,…[s]urvey evidence

18 may establish actual confusion." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618

19 F.3d 1025, 1035 (9th Cir. 2010) (citations omitted). In *Fortune Dynamic*, the Ninth Circuit reversed a grant

20 of summary judgment because the district court did not consider a survey showing a net confusion rate of

21 11%. Id. at 1037. Although the survey had a "number of shortcomings," the court held that "these criticisms,

22 valid as they may be, go to 'issues of methodology, survey design, reliability, ... [and] critique of

23 conclusions,' and therefore 'go to the weight of the survey rather than its admissibility.'" Id. at 1037-38

24 (citation omitted).

25     Even though the Court disagreed, this legal standard established by the 9th Circuit is the standard by

26 which Metabyte conducted discovery and prepared its case. It was this standard upon which Metabyte

27 believed the case would go to trial. Furthermore, for Metabyte this was a very simple lawsuit, exactly along

28 the lines of the 37 TTAB oppositions that Defendant has filed.  Meta opposed registration of the marks

'Metafans' (in opposition to Application No. 97097612) and 'Metastreet' (in opposition to Application No. 97264453), among others. Meta claimed that these marks are similar in sight, sound and commercial impression to its 'Meta' marks. By the same token, the 'Meta' marks are highly similar in sight, sound and commercial impression to 'Metabyte.' If the companies on the receiving end of those TTAB oppositions are similar in sight, sound and commercial impression, then Meta is similar to Metabyte as well i.e. Defendant admits the similarity of Metabyte and Meta. Therefore, the instant lawsuit was in good faith by Defendant's own admission. Metabyte's pursuit of its claims in good faith ended with this Court's order granting Meta summary judgment on August 18, 2025.

The Order granting Meta's motion for summary judgment stated that Metabyte did not show a genuine issue of material fact as to the likelihood of reverse confusion. The Court acknowledged in Metabyte's favor that confusion among prospective employees could be relevant, but Metabyte provided **virtually** no evidence showing actual confusion or harm to its business, including a flawed survey that failed to demonstrate damages or decreased willingness to work with Metabyte. It appears to have been overlooked, or not fully brought to the Court's attention, that Metabyte's survey evidence exclusively focused on job seekers and people involved in hiring decisions. For each respondent to participate in Metabyte's survey they "must currently or within the next 12 months be looking for job positions or be involved in hiring decisions in their current job capacity." Murthy Decl. ¶ 5 referring to Boedeker report pdf p. 20 (labeled p. 16) Exhibit 88 to Declaration of Karthik Murthy in support of opposition to Meta Platforms' MSJ Dkt. 86-11. This survey of 1,800 respondents shows that overall 24.8%, and in some cases as high as 29.7%, of relevant people perceive Metabyte as affiliated with Meta. This is considered significant by Ninth Circuit standards, See Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.,618 F.3d 1025, 1037 (9th Cir. 2010).

With such a high likelihood of association between Metabyte and Meta, the inquiry should not hinge on whether Metabyte can prove actual decrease in someone's willingness to work with Metabyte. Meta is a controversial company whose reputation has been cyclical. Metabyte should not be compelled to endure the rise and fall of Meta's reputation.

Metabyte's claim of trademark genericness also failed legally because term "Meta" has been consistently registered by the PTO without genericness refusals. The court overlooked that Meta's several 'Meta' trademarks were for unrelated goods like tote bags and umbrellas (trademark registration 97340027),

1   writing instruments, namely, pens (trademark registration 97979146), clothing (trademark

2   registration 97340034), and water bottles (trademark registration 97340031). It creates a triable issue of fact

3   whether these rights can be lumped together with some technology-related narrow 'Meta' marks to claim

4   broad rights as an umbrella trademark over the technology industry including the software and internet

5   industries.

6       Despite Metabyte's assertion that declining revenues indicated harm, the **evidence** showed that

7   revenue decline began before Meta's rebranding, undermining Metabyte's damage claims, while the record

8   also shows that this dispute has interfered with Metabyte's business recovery. (Mehta Dec. ¶ 5-6.)  Thus,

9   although Metabyte did not prevail on summary judgment, it believes its claims were supported by at least

10  some evidence, creating a triable issue of fact on colorable and not frivolous claims.

11      Metabyte is mounting this significant fight against a corporate giant, Meta, despite being a small

12  business of fewer than 50 employees at present, striving to recover from pandemic setbacks that struck as it

13  pivoted since 2018 toward a peer-networking-based career platform, a transition further paused and delayed

14  by this dispute. (See Meta Decl.___). Any award of fees against Metabyte would be devastating, potentially

15  threatening its very existence—particularly in light of the downturn in its business in recent years and the

16  extensive burden it has already borne in contending with Meta's aggressive litigation tactics.

17              II.    <u>**LEGAL STANDARD GOVERNING FEE MOTIONS**</u>

18      Under the Lanham Act, the court in exceptional cases may award reasonable attorney fees to the

19  prevailing party. (15 U.S.C. § 1117(a).) <u>**The Ninth Circuit defines "exceptional" cases as those involving**</u>

20  <u>**willful, deliberate, fraudulent, or malicious conduct.**</u> (*Playboy Enters., Inc. v. Baccarat Clothing Co.*, (9th

21  Cir. 1982) 692 F.2d 1272, 1276; *Sealy, Inc. v. Easy Living, Inc.*, (9th Cir. 1984) 743 F.2d 1378, 1384;

22  *International Olympic Comm. v. San Francisco Arts & Athletics*, (9th Cir. 1986) 781 F.2d 733, 738; *U-Haul

23  Int'l, Inc. v. Jartran, Inc.*, (9th Cir. 1986) 793 F.2d 1034, 1042; *Levi Strauss & Co. v. Shilon*, (9th Cir. 1997)

24  121 F.3d 1309, 1314; *O'Brien Int'l, Inc. v. Mitch*, (N.D. Cal. 1980) 209 U.S.P.Q. 212, 216; *Warehouse

25  Restaurant, Inc. v. Customs House Restaurant, Inc.*, (N.D. Cal. 1982) 219 U.S.P.Q. 1221, 1224; *PepsiCo,

26  Inc. v. Triunfo-Mex, Inc.*, (C.D. Cal. 1999) 189 F.R.D. 431, 433.) A determination of whether a case is

27  exceptional must be made based on the totality of the circumstances and remains within the discretion of the

28  court. As will be set forth below, this case is not one involving willful, deliberate, fraudulent, or malicious

1  conduct on the part of Metabyte or its lawyer.

2  **A.    When Attorneys' Fees May Be Awarded To Prevailing Defendant.**

3     **Courts may award attorneys' fees to prevailing defendants** under 15 U.S.C. § 1117(a) **when the**

4  **plaintiff's claims are** **frivolous, brought in bad faith, or meritless**. Attorneys' fees are appropriate where

5  a plaintiff produces **no admissible evidence** of infringement and asserts rights in a generic, unregistrable

6  term, rendering the claims frivolous and the case exceptional (*K-Jack Eng'g Co. v. Pete's Newsrack, Inc.*,

7  (C.D. Cal. 1980) 209 U.S.P.Q. 386, 388.) A case may be deemed exceptional when the plaintiff's **claims**

8  **are extraordinarily weak and based on a legal theory with no realistic chance of success** (*Amusement*

9  *Art, LLC v. Life Is Beautiful, LLC*, (9th Cir. 2019) 768 F. App'x 683, 685). Fees may be awarded when the

10 plaintiff fails to produce any evidence of infringement and pursues **groundless, frivolous, and**

11 **unreasonable arguments** (*Ketab Corp. v. Mesriani & Assocs., P.C.*, (9th Cir. 2018) 734 F. App'x 401,

12 407.) A fee award may be justified where the plaintiff's Lanham Act claims are pursued in **bad faith and**

13 **are objectively unreasonable**, even if the plaintiff claims to have relied on advice of counsel (*Love v.*

14 *Associated Newspapers*, (9th Cir. 2010) Ltd., 611 F.3d 601, 615–16.)

15     As aptly stated by the Ninth Circuit, "the loss of control over one's trademarks, reputation, and

16 goodwill is "a quintessentially irreparable injury." *Vineyard House, LLC v. Constellation Brands U.S.*

17 *Operations, Inc.,* 515 F. Supp. 3d 1061, 1081 (N.D. Cal. 2021). Metabyte pursued its claims against Meta

18 because its business is important to it and, even if this Court concluded that Metabyte lacked sufficient

19 evidence to overcome summary judgment, the claims were not brought in bad faith.

20     For the reasons set forth herein, Meta's demand for fees should be denied.

21              **III.    ARGUMENT**

22     In light of the evidence presented by Metabyte and Metabyte's consistent good faith conduct

23 throughout discovery, this case falls exceedingly short of the high bar required for deeming it "exceptional"

24 under the applicable standard and therefore does not justify an award of attorneys' fees or expert fees.

25 **A.    This Is Not An Exceptional Case Entitling Meta To Fees Under The Lanham Act.**

26     Meta relies on the standard set forth in *Vineyard House*, claiming this case is "exceptional" because

27 of the purported weakness of Metabyte's litigation position and the manner in which the case was litigated.

28 However, this reliance is misplaced. In *Vineyard House*, the court found the case "exceptional" because the

plaintiff had pursued self-centered, unfounded ideas and used the litigation process as a free means to test those personal theories, without regard for the legal merits or evidentiary support. (*Vineyard House, LLC v. Constellation Brands U.S. Operations, Inc.*, (N.D. Cal. 2021) 619 F. Supp. 3d 970, 973.) The court emphasized that such self-indulgent misuse of the judicial system justified a fee award to deter similar conduct. (*Id.*). Indeed, plaintiff accused of infringement on a trademark "not only used the mark without consent, but it did so in violation of this Court's preliminary injunction." *Vineyard House*, supra, at 1073.

Meta fails to acknowledge that courts have only found cases "exceptional" and awarded fees in far narrower circumstances than those presented here. Indeed, in *Vineyard House* United States District Judge Yvonne Gonzalez Rogers stated, after ten years on the bench, "This Court cannot recall a single instance where it awarded attorneys' fees under a standard requiring "exceptional" or "extraordinary" circumstances (as opposed to fees authorized by statute or contract to a prevailing party)." *Vineyard, supra* at 973 (N.D. Cal. 2021). Nothing in this case approaches the kind of abusive or meritless claims or conduct that warrants a finding of "exceptional" pursuant to 15 U.S.C. § 1117(a).

### 1.   Weakness Of The Claim Is Not The Correct Standard; Metabyte Produced Admissible Evidence Even If Found Insufficient To Overcome Summary Judgment.

Meta's claim that the alleged weakness of Metabyte's claim makes this case "exceptional". That is an incorrect statement of the law. Meta cites, *Amusement Art, LLC*, in support where the Ninth Circuit found the claims exceptional because the trademark registrations at issue were procured through fraud. (*Amusement Art, LLC v. Life Is Beautiful, LLC*, (9th Cir. 2019)768 F. App'x 683, 687.) *Amusement Art, LLC* cannot be compared to the present case where there is no allegation, let alone evidence, of fraud. The correct standard for what is an "exceptional" case is where a plaintiff proceeds without producing any admissible evidence of infringement coupled with some additional wrongful conduct. (*K-Jack Eng'g Co. v. Pete's Newsrack, Inc.*, (C.D. Cal. 1980) 209 U.S.P.Q. 386, 388.) For example, in *K-Jack Eng'g Co.*, the Court found that Plaintiff breached its duty of disclosure by withholding from the Patent Office knowledge that the invention at issue at been sold years before in 1969, and yet maintained an infringement action on the patent for that invention secured by Plaintiff's own breach of duty. That concealment, coupled with a total lack of admissible evidence to support infringement, is what converted the case into an exceptional case. See *K-Jack Eng'g Co. v. Pete's Newsrack, Inc.*, No. 77-3184-R, 1980 WL 30245, at *3 (C.D. Cal. Sept. 3, 1980), decision

supplemented, No. 77-3184-R, 1980 WL 30258 (C.D. Cal. Oct. 20, 1980).

The correct standard required to convert a case to an exceptional case is not met here. Metabyte did produce evidence in support of its claims even if deemed insufficient to overcome summary judgement. Metabyte offered the expert report of Stefan Boedeker, a statistician and economist with more than 30 years of experience and advanced degrees in statistics and economics who conducted three Eveready style surveys (a survey that does not prompt the respondent with the more well-known mark) that show high levels of actual confusion. He used three separate test stimuli, modified to test reverse confusion (showing Metabyte's mark rather than Meta's) and controlling for guesses. Murthy Dec. ISO opposition to MSJ Ex. 87 at 46:19 – 49:16. Murthy ISO opposition to MSJ Ex. 88 at ¶¶ 52-62. Metabyte also presented anecdotal evidence of actual confusion via multiple third parties who  expressed mistaken assumptions about the relationship between the parties, demonstrating confusion in the marketplace.

> In summer of 2022, a job candidate was considering a position at Abbott Labs that had been advertised by Metabyte. During a phone conversation with Metabyte's Director of Client Services, Aradhana Mehta, the candidate remarked—words to the effect of—"You are not Meta! Then, why have you named yourself Metabyte?" Metabyte was ultimately unable to close this candidate.

> In Fall of 2022, a job candidate was considering a position at Abbott Labs that had been advertised by Metabyte. During a phone conversation with Ms. Mehta, the candidate remarked—words to the effect of—"Is Metabyte a part of Meta?" Metabyte was ultimately unable to close this candidate. (*See* Dkt. 90 Mehta Dec. ¶ 45.)

These real-world examples of confusion underscore Metabyte's good faith evidentiary basis to believe and support the concern that Meta's rebranding was causing confusion with Metabyte's business. Indeed, the Court agreed with Metabyte, and disagreed with Meta, that evidence of confusion need not be limited to its customers but could also be shown by job candidates. (Declaration of Karthik Murthy ("Murthy decl.") Pg. 41 ¶ 2 Exhibit B.) And even if insufficient to overcome summary judgment, Metabyte's case was not wholly lacking in evidence. Ninth Circuit law is clear that lost sales are not a prerequisite to establishing a likelihood of confusion, and survey data, combined with anecdotal evidence and interrogatory responses, provides a sufficient factual basis for pursuing these claims. Actual confusion evidence, particularly for a small company after its presence has been overrun, is hard to find and, even if there were none, it would not weigh much against a finding of likely confusion. *Am. Int'l Grp., Inc. v. Am. Int'l Bank*, 926 F.2d 829, 832 (9th Cir. 1991) ("Actual confusion is not necessary to a finding of likelihood of confusion under the Lanham

Trade Mark Act."); *Coach, Inc. v. Jay*, No. CV-14-04283-DSF(PLAx), 2015 WL 12681378, at *1 (C.D. Cal. June 25, 2015) ("Coach need not produce evidence of actual confusion in order to survive summary judgment."); *Rexel, Inc. v. Rexel Int'l Trading Corp.*, 540 F. Supp. 2d 1154, 1171 (C.D. Cal. 2008) (granting summary judgment for plaintiff on infringement claims despite absence of actual confusion evidence) (citing *Acad. of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1456 (9th Cir.1991)) ("[I]n this circuit, actual confusion is not necessary to a finding of likelihood of confusion under the Lanham Act."); *Brookfield Commc'ns., Inc.*, 174 F.3d at 1047 ("The failure to prove instances of actual confusion is not dispositive against a trademark plaintiff, because actual confusion is hard to prove.")). In any event, the Ninth Circuit has recognized that "[b]ecause of the difficulty in garnering [actual confusion] evidence,…[s]urvey evidence may establish actual confusion." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1035 (9th Cir. 2010) (citations omitted). Metabyte presented such evidence.

Meta's claim that Metabyte presented no evidence is false and, alone, is an insufficient basis on which to claim an award of fees pursuant to 15 U.S.C. § 1117(a). This is not an "exceptional case" and no award of attorneys' fees is justified.

### 2. The Genericness Claim Was Not Frivolous.

Metabyte asserted a claim of genericness as an alternative theory for recovery, which is legally permissible and entirely consistent with Ninth Circuit precedent. The TTAB issued an order that denied Meta's motion to dismiss Metabyte's opposition to Meta's trademark application on the grounds of genericness, finding the claim to be sufficiently pleaded. (Murthy decl. ¶ 5). Genericness is evaluated at the time of trademark registration, whereas the likelihood of confusion may evolve over time as the brand enters the marketplace and interacts with consumers. (*Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.* (9th Cir. 2005) 419 F.3d 925, 929.) Meta's change in branding occurred after Metabyte was in the marketplace. Evaluating its new brand for genericness was wholly reasonable as argued in the summary judgment brief:

> META is both a generic and functional term—and therefore unprotectable. 15 U.S.C. § 1127; 15 U.S.C. § 1125(a), 15 U.S.C. § 1052(e)(5). A generic, functional linguistic component in the software and internet industries cannot be monopolized, particularly in a broad swath of all technologies. "The reason is plain enough. To allow trademark protection for generic terms, i.e., names which describe the genus of goods being sold,

even when these have become identified with a first user, would grant the owner of the mark a monopoly, since a competitor could not describe his goods as what they are." *CES Pub. Corp. v. St. Regis Publications, Inc.*, 531 F.2d 11, 13 (2 Cir. 1975). *Surgicenters of America, Inc. v. Medical Dental Surgeries, Co.,* 601 F.2d 1011, 1016 (9th Cir. 1979).

META was selected to represent the metaverse—a widely used term describing a virtual, interconnected digital world…making it generic for the very category of products and services Meta aims to offer. Meta's own internal documents confirm that "Meta" was adopted to denote moving "beyond" boundaries… Meta executives confirm that "Meta" was chosen because it means "beyond."

(Murthy decl. pg. 32 ¶¶ 3, 4 Exhibit A.)

Metabyte pursued both causes of action because they provide for different standards of proof and recovery: one challenges the validity of Meta's marks at the outset, while the other addresses the potential market effects of those marks over time.

### 3.    Metabyte's Conduct Was Reasonable.

Metabyte did not engage in any conduct that delayed the proceedings, obstructed discovery, or caused unnecessary motion practice that would support a finding of an exceptional case under 15 U.S.C. § 1117(a). There is absolutely no evidence of willful, deliberate, fraudulent, or malicious conduct to qualify as "exceptional." On March 13, 2025, Magistrate Illman denied Metabyte's motion to compel Zuckerberg's deposition as an apex officer because Metabyte had not exhausted less intrusive discovery methods first. Meta, on the other hand, noticed the deposition of Metabyte's apex officer Mr. Mehta and Metabyte complied despite having 30 employees in 2025, including people who were hired for other companies and who work at other companies. (Manu Mehta's deposition depo pg. 297.) Could Metabyte have objected to the deposition notice the same way that Meta did? Yes. But it didn't. Metabyte allowed Meta to conduct the discovery it believed it needed.

Magistrate Illman granted Meta's request for entry of its proposed ESI protocol because Meta argued the documents produced were inadequate and <u>argued</u> that "Metabyte's counsel admitted that Metabyte CEO Manu Mehta – unsupervised by counsel – was responsible for its document collection". Meta's argument about counsel's admission is not supported by the evidence. Metabyte's counsel said, "Upon hearing the concerns of Defendant's attorneys during meet and confer calls, Metabyte's counsel **went back and interviewed multiple employees of Metabyte, not just the CEO, and verified that production had been thorough and complete."** This statement is not an admission that "Metabyte's CEO Manu Mehta –

- 11 -

unsupervised by counsel – was responsible for its document collection." Metabyte's counsel acknowledged opposing counsel's concerns, and **went back and interviewed not only the CEO but also employees of the company.** Metabyte through its counsel cooperated in discovery, addressed Meta's concerns, and complied with the court's orders. Metabyte's counsel revisited the completeness of the discovery and agreed that the issues were narrow and the production complete. Meta's argument is pure rank speculation about how much involvement Metabyte's counsel had in the discovery process. Metabyte did not share with Meta is privileged client communications and investigatory work product. Meta's argument is not fact.

Magistrate Illman's April 11, 2025, Discovery Order does not support a finding of bad faith by Metabyte as the record clearly shows Metabyte's compliance with the Court's directives. The Order compelled further production of documents and other ESI including **new** search terms proposed by Meta on April 7, 2025. Metabyte did not object. Metabyte produced the responsive documents timely by April 22, 2025, and complied with the Court's order. Meta then complained that the production was too big. Metabyte could never satisfy Meta's discovery demands.

Metabyte was ordered to amend only 7 out of 24 Interrogatories, 6 out of 153 Requests for Admissions, and 19 out of 153 responses to Requests for Production. That translates to 90% compliance with Meta's 330 separately stated written discovery demands. Furthermore, regarding depositions, "Metabyte **agree[d] to work with Meta** to provide mutually acceptable dates for the rescheduled depositions of Arjun Mehta, Aradhanna Mehta, Manu Mehta, and Metabyte's Rule 30(b)(6)." Metabyte's pattern of cooperation and responsiveness demonstrates that Metabyte acted in good faith. Nothing that occurred during discovery provides for a conclusion that this case is an "exceptional case" under 15 U.S.C. § 1117(a). Magistrate Illman never issued sanctions for any perceived discovery abuse. Parties don't always agree. Discovery disputes are not uncommon. No award of attorneys' fees is warranted in this case.

### 4. There Was No Misrepresentation Or Malicious Website Manipulation.

Metabyte has a right to add its own name to the taglines of its businesses such as "Web services by Metabyte," or "Metabyte Peer Network.". Metabyte also has a right to expand into other industries and should not be constrained by a junior user such as Meta. Metabyte has every right to be in virtual reality, Metabyte was in it years ago, then when the market seemed hot, Metabyte reentered, and then when the market seemed like it was going nowhere, Metabyte left.  Indeed, opposing counsel even stated that this

1  issue doesn't matter anymore in the hearing on motion for summary judgment. Why Meta brings it up now

2  is evidence of the seriously stretch it is making to deem this case "exceptional". It is not.

3          Additionally, there was no misrepresentation of revenue decline. While Meta emphasizes revenue

4  declines, Metabyte disputes that the decline prior to the rebrand fully accounted for its financial losses.

5  Respectfully, the evidence of decline over time raises a triable question of material fact. Revenues can be

6  affected by multiple factors, including the economic impact of COVID-19 and the effects of Meta's rebrand.

7  Metabyte put forward extensive expert witness testimony in it's opposition supporting its findings regarding

8  revenue loss and confusion. (*See* Dkt. 97 at 26:8-27:18.) Even if some decline began before the rebrand,

9  Metabyte has a colorable claim that Meta's branding decisions caused additional confusion and contributed

10  to further lost sales or business opportunities. Ninth Circuit law is clear that establishment of lost sales are

11  not a prerequisite to establishing a likelihood of confusion: "Actual confusion is not necessary to a finding

12  of likelihood of confusion under the Lanham Act. (*Academy of Motion Picture Arts & Sciences v. Creative*

13  *House Promotions, Inc.,* 944 F.2d 1446, 1456 (9th Cir.1991) (citing *American Int'l Group, Inc. v. American*

14  *Int'l Bank,* 926 F.2d 829, 832 (9th Cir.1991).) Survey data, combined with anecdotal evidence and

15  interrogatory responses, provides a sufficient factual basis for pursuing these claims. The Court's observation

16  that some revenue decline preceded the rebrand is evidence, even if the Court did not accept it as sufficient

17  to overcome summary judgment.

18  **B.    Expert Fees Are Not Warranted.**

19          Meta fails to rely on a single published case that supports the argument that Section 1927 and the

20  Court's inherent power provide an independent justification for an award of Meta's expert fees. In fact, the

21  case Meta relies requires an "abuse of court processes." *Finjan, Inc. v. Juniper Networks, Inc.,* 2021 WL

22  3140716, at *4 (N.D. Cal. July 26, 2021). Meta has failed to provide evidence of an abuse of court processes.

23  Section 1927 is applied narrowly as the case Meta cites so states and does not provide for the recovery of

24  expert fees in this case.

25  **C.    The Request For Metabyte's Counsel To Be Liable Is In Bad Faith And Must Be Rejected.**

26          Under 28 U.S.C.A. § 1927, any attorney or other person admitted to conduct cases in any court of the

27  United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and

28  vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees

reasonably incurred because of such conduct. For all the reasons set forth above, there simply is no evidence to support the inclusion of Metabyte's counsel in this motion. To the contrary, Metabyte, through its counsel complied with discovery in good faith, complied with the court's orders, cooperated in rescheduling depositions, and Meta remained unsatisfied throughout. Meta's propounded massive written discovery demands using its deep bench of attorneys. Metabyte through its solo practitioner attorney, responded in good faith. Counsel never acted vexatiously, never conducted the case to multiply proceedings. In fact, counsel believed the initial production of documents by Metabyte was compliant based on the narrow claims asserted. And when Meta objected and demanded search terms be used to gather additional electronically stored data, Metabyte's counsel facilitated that effort only to have Meta complain that the production was too much. Metabyte through its solo practitioner lawyer did not have the resources to review the production for relevance or duplication *and* meet the two week deadline for production. And even if it did, it was clear that Meta disagreed with Metabyte's evaluation of what was relevant so Metabyte provided the scope of records Meta demanded.

With respect to Mr. Murthy's involvement in the case beginning February 2024, there is no evidence of any misconduct by him, much less his client. In the published version of the case Meta relies on, attorneys' fees were only awarded because "[Plaintiff]'s counsel repeatedly raised claims based on legal theories that the court had previously dismissed". (*Ketab Corp. v. Mesriani & Assocs., P.C.*, (9th Cir. 2018) 734 F. App'x 401, 412.) That is simply not the case here. Additionally, the same case Meta relies on clearly states "Section 1927 applies to "*excess* costs, expenses, and attorneys' fees reasonably incurred because of such conduct." (*Id*.) Meta is the one who demanded a massive document production and then complained that the productionit was too big. Meta created its own costs and should not be allowed to characterize them as "excess" and the responsibility of opposing counsel. Asking the Court for a finding of "extraordinary" is already asking for extraordinary relief not available under these facts because such a finding is made only on rare occasions when bad faith or fraud is present. Asking the Court for an order making the opposing lawyer responsible for the payment of fees and costs was clearly intended to squeeze the opposition into a settlement, to scare the solo practitioner who worked hard to keep up with the Goliath, to manufacture a conflict between lawyer and client all because the client refused to abandon the right to appeal. Metabyte requests this Court reject this request.

**D.    The Fees And Costs Are Excessive.**

Cooley boasts that it "is a large international law firm, and its global trademark, copyright and advertising group is one of the largest among AmLaw 50 firms" and yet it claims to have billed its client an extraordinary amount of time for research related to discovery motions, and research related to cross motions for summary judgment. See Decl. of C. Ghazarian paragraph 5. This declaration is contradictory. Also, this case was narrow in scope, two causes of action, and but for Cooley and Meta's demand for 100,000 documents, relatively modest in terms of relevant discovery. Cooley complains about having to review 100,000 documents produced by Metabyte, but Cooley and Meta demanded this production using their search terms! Metabyte cannot possibly be punished for complying with the court's discovery order that Meta and Cooley asked for. Everything about this motion screams bad faith.

The rates are way outside of the "prevailing hourly rates charged by attorneys and staff with similar experience" as set forth in in the cases Cooley itself cites – rates top out at $1275. Yet Cooley demands rates of $1475 on the low side to $1745 per hour on the high side. Furthermore, the issues in the case did not warrant multiple attorneys. Metabyte respectfully requests this Court not punish it or its attorney for pursuing claims it believed in and deny this motion in its entirety. A reduction in the fees and costs requested will still amount to a punishment and will deter any other small business from pushing back on Meta even with an honest and good faith belief that Meta is interfering with that small business's livelihood.

## IV.    <u>CONCLUSION</u>

Defendant's motion should be denied outright. Meta's request seeks to leverage its overwhelming resources to punish a small company for asserting claims supported by facts, including expert survey evidence and documented instances of marketplace confusion. Meta drove up its own costs in discovery. The requested fee award would not serve the interest of justice and instead would create a chilling effect on small business with legitimate claims who simply cannot compete with the resources deployed by Meta. Metabyte pursued its rights reasonably and diligently. Imposing a multi-million-dollar fee award under these circumstances would be inequitable and contrary to the equitable principles governing fee awards under 15 U.S.C. § 1117(a).

DATED:  October 10, 2025                    MURTHY PATENT LAW INC.


By  */s/ Karthik K. Murthy*_____
    Karthik K. Murthy
    K@MurthyPatentLaw.com
    3984 Washington Blvd., Suite 324
    Fremont, CA 94538
    Telephone: (425) 968-5342
    Facsimile: (425) 215-0247
    *Attorneys for Plaintiff*
    Metabyte, Inc.